| | )  | |
|---|---|---|
| **CYNTHIA PRICE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:18-CV-01693-NCC** |
| | ) | |
| **ANDREW M. SAUL,**[1] | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Cynthia Price ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 19) and Defendant has filed a brief in support of the Answer (Doc. 26). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on August 12, 2016 (Tr. 178-79). Plaintiff was initially denied on November 10, 2016, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on December 14, 2016 (Tr. 122-29). After a hearing, by decision dated May 15, 2018, the ALJ found Plaintiff not disabled (Tr. 12-32). On September 4,

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021, and that Plaintiff has not engaged in substantial gainful activity since August 13, 2016, the amended alleged onset date (Tr. 17).  The ALJ found Plaintiff has the severe impairments of carpal tunnel syndrome, asthma, hypertension, and anemia, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18-22).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a range of light work[2] with the following limitations (Tr. 23). Plaintiff can frequently handle, finger and feel bilaterally (*Id.*).  She can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but can never climb ladders, ropes or scaffolds (*Id.*).  She can tolerate no more than occasional exposure to unprotected heights or unprotected moving mechanical parts, humidity, wetness, dusts, odors, fumes and other pulmonary irritants, extreme cold and extreme heat (*Id.*).  The ALJ found Plaintiff unable to perform any past relevant work but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform including production assembler, packager, and

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 416.967(b), 404.1567.

laundry worker (Tr. 27-28).  Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 28).  Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id.*  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff asserts that the ALJ failed to fully and fairly develop the record (Doc. 19 at 3-11). Second, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's severe impairments at Step 2 (*Id.* at 11-15). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

### A. Step 2: Severe Impairments

The Court will first address Plaintiff's assertion that the ALJ failed to properly evaluate Step 2, Plaintiff's severe impairments (Doc. 19 at 11-15). Specifically, Plaintiff argues that the ALJ erred in finding Plaintiff's lumbar spondylosis[3] not to be a severe impairment (*Id.*). "An impairment or combination of impairments is not severe if it does not significantly limit your

---

[3] Stiffening or fixation of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature. *Stedman's Medical Dictionary* 840410, 43650.

physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521. While a claimant

has the burden of showing a severe impairment that severely limits her physical or mental ability

to perform basic work activities, the burden "is not great" and "[t]he sequential evaluation

process may be terminated at step two only when the claimant's impairment or combination of

impairments would have no more than a minimal impact on [his or her] ability to work."

*Caviness*, 250 F.3d at 605. Basic work activities are those "abilities and aptitudes necessary to

do most jobs." 20 C.F.R. §§ 404.1521(b).

     The Court finds the ALJ's determination regarding Plaintiff's severe impairments to be

supported by substantial evidence. Although Plaintiff listed chronic back pain and sciatic nerve

damage on her application and was diagnosed with stenosis of the lateral recess of the lumbar

spine (Tr. 36, 109), the record does not establish that Plaintiff's lumbar spondylosis constitutes

"more than a minimal impact on her ability to do work." *Caviness*, 250 F.3d at 605. As noted

by the ALJ in her detailed review of the impairment, x-rays of the lumbar spine showed only

mild degenerative changes and mild spondylosis of the lumbar facets, bilaterally (Tr. 18, 302,

500). Indeed, in a physician progress note dated August 10, 2015, Dr. James C. Strickland, an

orthopedic surgeon, states "Previous radiographs of the lumbar spine were unremarkable" (Tr.

302). Another physician found other imagining of the spine unremarkable and noted, "Recent

MRI scans of the cervical spine were normal" (Tr. 441). Although Plaintiff was diagnosed with

sciatica and several physicians recommended that she pursue physical therapy, as noted by the

ALJ, Plaintiff did not follow through on the recommendations (Tr. 25, 303, 461, 592, 642).

Additionally, at the time of the hearing, Plaintiff had not received the MRI scan recommended

by her physician (Tr. 25, 44-45, 642-43). Regardless, upon its eventual competition after the

hearing, the April 2018 MRI revealed only mild lumbar spondylosis (Tr. 59). Plaintiff's physical

exams were also largely normal repeatedly indicating normal gait pattern, fairly good range of rotation and side bending, normal range of motion, no edema or tenderness, with minor, infrequently listed abnormal findings of cervical motion with mild pain on the extreme of extension and limited lumbar motion on flexion and extension with back pain noted on bilateral straight leg raising (Tr. 45, 307, 318, 352, 424, 440).

Regardless, the ALJ considered Plaintiff's lumbar spondylosis when determining Plaintiff's RFC. *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008). *See also Brockman v. Berryhill*, No. 2:16-CV-00032 JAR, 2017 WL 4339502, at *4 (E.D. Mo. Sept. 29, 2017); 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity."). Specifically, the ALJ found Plaintiff able to perform a range of light work with several physical limitations including that she can occasionally[4] climb ramps and stairs, balance, balance, stoop, kneel, crouch, and crawl but can never climb ladders, ropes or scaffolds (Tr. 23). In so limiting Plaintiff, the ALJ noted during her RFC analysis that "[i]t is with the evidence regarding *all* of her impairments in mind that I have formulated the [Plaintiff's] residual functional capacity" (Tr. 26-27)(emphasis added). In fact, the ALJ indicated this same sentiment when addressing Plaintiff's impairments at step 2; "[A]ny such effect that the [Plaintiff's] non-severe impairments would have on her ability to function have been considered when formulating the residual functional capacity" (Tr. 18). Therefore, to the extent the ALJ erred by not finding Plaintiff's

---

[4] "Occasionally" means occurring from very little up to one-third of the time. SSR 83-10, 1983 WL 31251, *6 (Jan. 1, 1983). *See also* SSA Program Operations Manual System, DI 25001.001.

lumbar spondylosis to be a severe impairment, such error was harmless in light of the ALJ's

consideration of Plaintiff's lumbar spondylosis in her RFC analysis.  *Givans v. Astrue*, No. 4:10-

CV417-CDP, 2012 WL 1060123, at *17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ

erred in failing to find one of the plaintiff's impairments to be severe, the error was harmless

because the ALJ found other severe impairments and considered both those impairments and the

plaintiff's non-severe impairments when determining Plaintiff's RFC).  *See also Byes v. Astrue*,

687 F.3d 913, 917 (8th Cir. 2012) (noting that an error is harmless unless the ALJ would have

decided the case differently).  In conclusion, the Court finds the ALJ's determination regarding

Plaintiff's severe impairments to be based on substantial evidence and consistent with

Regulations and case law.

## B. Fully and Fairly Develop the Record

Next, Plaintiff asserts that the ALJ failed to fully and fairly develop the record (Doc. 19

at 3-11).  RFC is the most a claimant can still do in a work setting despite that claimant's

physical or mental limitations.  *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (citation

omitted); 20 C.F.R. § 416.945(a)(1).  An ALJ determines a claimant's RFC "based on all the

relevant evidence, including medical records, observations of treating physicians and others, and

[claimant's] own description of her limitations."  *Page*, 484 F.3d at 1043 (quoting *Anderson v.

Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)).  Although the ALJ bears the primary responsibility

for assessing a claimant's residual functional capacity based on all relevant evidence, "a

claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704

(8th Cir. 2001) (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).  *See also Hutsell v.

Massanari*, 259 F.3d 707, 712 (8th Cir. 2001).  "Because a claimant's RFC is a medical question,

an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability

to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (quoting *Cox*, 495 F.3d at 619). "An administrative law judge may not draw upon [his or her] own inferences from medical reports." *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000).

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citations omitted). In some cases, this duty requires the ALJ to obtain additional medical evidence, such as a consultative examination of the claimant, before rendering a decision. 20 C.F.R. § 416.945(a)(3) ("before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary…."). "Failing to develop the record is reversible error when it does not contain enough evidence to determine the impact of a claimant's impairment on [her] ability to work." *Byes*, 687 F.3d at 916. However, "this duty is not never-ending and an ALJ is not required to disprove every possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011). "Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). "Past this point, 'an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" *Id.* (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Twyford v. Commissioner*, 929 F.3d 512, 517 n.3 (8th Cir. 2019) (citing *Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995)).

As a preliminary matter, the Court finds that the ALJ properly evaluated Plaintiff's subjective complaints.[5] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The ALJ found Plaintiff's "statements about the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 24). The ALJ specifically noted that the symptoms are "inconsistent with the medical evidence of record" indicating that while Plaintiff has alleged extreme symptoms and limitations, "the objective signs and findings on exams and imagings are generally mild and

---

[5] Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

inconsistent with her allegations" (Tr. 24). For example, as the ALJ noted, Plaintiff's alleged

limitations regarding handling, fingering and feeling are not supported by the electrodiagnostic

studies of her bilateral upper extremities (Tr. 24, 665, 675-77). Indeed, Plaintiff initially

reported that her symptoms were better after bilateral carpal tunnel surgery in late 2015 and her

surgeon released her back to work (Tr. 24, 541, 555). Plaintiff did not stop working until August

5, 2016, and she told her hand surgeon that she stopped working because of her sciatica, not her

carpal tunnel syndrome (Tr. 24, 554-55). Plaintiff's application supports this assessment;

Plaintiff did not list her carpal tunnel syndrome as an impairment on her application (Tr. 209).

Further, the most recent electrodiagnostic study from February 2018 was largely normal (Tr. 45-

46). An ALJ may determine that subjective complaints are not credible in light of objective

medical evidence to the contrary. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

The ALJ also reviewed Plaintiff's activities of daily living, finding that Plaintiff has no

limitation in adapting or managing herself (Tr. 21). Specifically, as it relates to Plaintiff's

physical impairments, the ALJ found that Plaintiff "reported that she has no problems with

taking care of her personal care needs," noting that Plaintiff testified that "she picks up around

the house, prepares simple meals, and loads the dishwasher" (Tr. 21, 87-88). Indeed, on her

August 2016 function report, Plaintiff indicates that she does all of her personal care herself (Tr.

217). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between

[the claimant's] subjective complaints and evidence regarding her activities of daily living also

raised legitimate concerns about her credibility.").

The ALJ further indicated that "the evidence of record shows that the [Plaintiff] has been

non-compliant with treatment recommendations" including advice to quit smoking, lose weight,

avoid alcohol, and exercise (Tr. 24, 84, 429, 436, 622, 661-62). At the time of the hearing,

Plaintiff had also not undergone a recommended lumbar MRI (Tr. 25, 642-43, 664-65). *See also* Tr. 44-45 (record from February 8, 2018 indicating that, "She did not schedule her MRI as of yet because of claustrophobia."). The ALJ may consider a failure to follow a course of treatment in determining whether a claimant may receive benefits. 20 C.F.R. §§ 404.1530, 416.930 (individual who fails to follow prescribed treatment without a good reason will not be found disabled). *See also Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (affirming where ALJ found that claimant's "credibility suffered from his refusal to take pain medication and his refusal to seek out even conservative treatments such as physical therapy"); *Wildman*, 596 F.3d at 966 (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control; claimant's noncompliance with a diet regimen prescribed by doctor contributed to a negative credibility determination).

The ALJ also found Plaintiff's severe impairments of asthma, hypertension, and anemia to be generally controlled with medication management by her primary care provider (Tr. 26, 314, 318, 352, 358-61, 365, 396, 429, 433-34, 440, 471-86). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *See Wildman*, 596 F.3d at 965 (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). Thus, the Court finds that the ALJ's evaluation of Plaintiff's subjective complaints to be based on substantial evidence and consistent with Regulations and case law.

Plaintiff nevertheless asserts that the ALJ failed to develop the record fully and fairly because the record does not contain a medical opinion and the ALJ failed to order a consultative examiner or a medical expert to review the evidence to provide a medical opinion that addressed Plaintiff's physical ability to function in the workplace (Tr. 19). Plaintiff specifically asserts that

the ALJ failed in her reliance on the absence of opinions from treating physicians (Doc. 19 at 4-6). Indeed, the ALJ stated

> [T]he record does not contain any opinions from treating physicians that the claimant is disabled or has greater limitations than those determined in this decision. Given the claimant's allegations of totally disabling symptoms, some indication in the treatment record of restrictions placed on her by a health care provider would be expected . . . . Rather than restricting [Plaintiff], her treating providers have recommended regular exercise, but have noted that the claimant is not exercising as recommended. I give these opinions some weight (Tr. 26).

Plaintiff argues that there is not any evidence that "anyone asked Plaintiff's treating physicians for an opinion regarding Plaintiff's work-related limitations" and, given the objective findings of multiple impairments, a medical opinion was required to determine Plaintiff's physical ability to function (Doc. 19 at 6).

The Court finds that the ALJ's RFC determination is supported by substantial evidence. A consultative examination is not warranted when, as is the case here, the ALJ can properly determine the RFC from the medical evidence provided. *Kamann*, 721 F.3d at 950. As a preliminary matter, contrary to Plaintiff's assertion, an ALJ may acknowledge the absence of medical opinion evidence supporting Plaintiff's claims. *Bryant v. Colvin*, 861 F.3d 779, 784 (8th Cir. 2017). In addition to the evaluation of Plaintiff's subjective complaints as addressed in more detail above, the ALJ also reviewed the objective evidence in her RFC analysis. Regarding Plaintiff's carpel tunnel syndrome, the ALJ notes that after quitting work in August of 2016, Plaintiff told her surgeon that she quit her job because of her sciatica, not carpal tunnel syndrome, and she did not return to see the surgeon with complaints regarding her hands in 2016 or 2017 (Tr. 25, 441-43, 612). Upon her return to treatment in 2018, electrodiagnostic studies were grossly within normal limits bilaterally, showing no evidence of active radiculopathy, peripheral nerve entrapment or generalize peripheral neuropathy (Tr. 25-26, 665, 675-77). The

ALJ otherwise found Plaintiff's severe impairments of asthma, hypertension, and anemia controlled with medication management (Tr. 26). To the extent Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**, with prejudice.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 3rd day of March, 2020.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE